**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-24482-DPG/Becerra

VITALY VLADIMIROVICH BOGOMAZOV,
          Plaintiff,

v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,
          Defendants.

_____/

**REPORT AND RECOMMENDATION[1]**
**ON DEFENDANTS' MOTION TO DISMISS**

        **THIS CAUSE** came before the Court upon Defendants, the United States of America (the

"United States"), the United States Department of Homeland Security ("DHS"), the United States

Immigration and Customs Enforcement ("ICE"), Officer George Williams ("Williams"), and

Officer Ralph Angulo's ("Angulo") (collectively "Defendants"), Motion to Dismiss First

Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (the

"Motion to Dismiss").  ECF No. [18].  Plaintiff Vitaly Vladimirovich Bogomazov ("Plaintiff")

filed a Response in Opposition (the "Response"), ECF No. [21], and Defendants filed a Reply in

Support of their Motion (the "Reply"), ECF No. [22].  The Parties subsequently presented oral

argument before the undersigned.  ECF No. [28].  Upon due consideration of the Motion, the

pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED IN PART AND**

**DENIED IN PART**.

---

[1] This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States
District Judge.  ECF No. [26].

## I.    BACKGROUND

Plaintiff is a Russian national who was lawfully admitted into the United States on a visitor's visa in July 2016.  ECF No. [12] ¶ 34.  In December 2016, Plaintiff filed an asylum application with the United States Citizenship and Immigration Services ("USCIS"), claiming that if he returned to Russia, he would be subject to prosecutorial persecution.  *Id.* ¶ 35.  In support of his asylum application, Plaintiff alleged that he and his wife were the founders of a company that "published a non-profit newspaper discussing different political situations in Russia, including the illegitimacy of the President, lack of an independent judicial system, corruption of the police and the authorities, annexing of the Crimea, the attack on Ukraine, and the incident of Nadezhda Savchenko's kidnapping."  *Id.* ¶ 36.  Plaintiff alleges that he served as a "legal representative of victims who had suffered abuse from police and other authorities."  *Id.* ¶ 37.  Plaintiff alleges that he and his wife have been the subjects of "fabricated politically motivated criminal investigations . . . but, at all times relevant . . . had never been formally charged with or convicted of a crime." *Id.* ¶ 38.  Plaintiff claims that he filed a petition for asylum after the Russian police department that fabricated a criminal investigation against him, beat and killed another detainee.  *Id.* ¶ 39.

On December 14, 2016, Plaintiff received a letter from USCIS confirming receipt of the asylum application and stating that he "may remain in the U.S. until [his] asylum application [was] decided [and] [i]f [he] wish to leave while [the] application [was] pending, [he] must obtain advance parole from USCIS."  *Id.* ¶ 43.  Moreover, Plaintiff alleges that in light of federal law and other considerations, "DHS policy has, since at least 2009, explicitly conferred an 'authorized period of stay' on good faith asylum applicants."  *Id.* ¶ 42.  In addition, on June 13, 2017, "USCIS issued Plaintiff an employment authorization with an expiration date of June 12, 2019," and as such, Plaintiff has been employed as a truck driver.  *Id.* ¶¶ 44, 85.

In January 2017, while his asylum application was pending, Plaintiff's authorized period of admission expired. *Id.* ¶ 40. In the interim, however, Plaintiff's daughter became a naturalized United States citizen. *Id.* ¶ 47. Thus, in November 2018, Plaintiff's daughter filed an immediate relative petition, which would enable Plaintiff and his wife to adjust their status to lawful permanent residents based on their daughter's citizenship status, irrespective of the expiration of the authorized period of stay. *Id.* ¶¶ 48–49. Plaintiff alleges that the sole question "before the USCIS was whether Plaintiff is her father, and whether the daughter is a U.S. citizen." *Id.* ¶ 50.

One year later, on November 8, 2019, Plaintiff and his wife, appeared for their adjustment of status interviews at a Miami Field Office for USCIS with their daughter. *Id.* ¶ 53. After the adjustment of status interview concluded, ICE officers, Defendants Angulo and Williams, entered the interview room and arrested Plaintiff without a warrant. *Id*. ¶ 54. Although not part of the record in this case, Plaintiff alleges that the arrest report indicates, as a basis for removal, that Plaintiff unlawfully remained in the United States for a period longer than permitted because he overstayed his visa. *Id*. ¶¶ 56–57. Moreover, the arrest report allegedly states that Plaintiff was the target of an Interpol Blue Notice out of Russia on a manslaughter charge. *Id.* ¶ 61.[2] The arrest report further indicated that Plaintiff did not have a criminal history in the United States, including

---

[2] In support of the Amended Complaint, Plaintiff submitted a report by Dr. Theodore Richard Bromund titled "Expert Report on Issues Related to the Interpol Communications on Mr. Vitaly Bogomazov." *See* ECF No. [12-1] at 1. Therein, Dr. Bromund explains Interpol's color alert codes as follows: Yellow (to help locate missing persons), Blue (to seek information about a person's identity, location, or activities in relation to a crime), and Red (to seek the location and arrest of wanted persons with a view to extradition or similar lawful action). *Id.* at 9. The twenty-nine page report concludes that: (1) the Blue Notice naming Plaintiff was not the result of any Interpol investigative process, provides no proof of the allegations it contains, and should not have been filed; (2) there is no Red Notice naming Plaintiff and that ICE materially misrepresented the fact in the case by identifying a "Diffusion," a notice for a wanted person, as a Red Notice; (3) the United States has procedures in cases where an individual with Red Notices is located in the country that were not followed here; (4) "Russian abuse of Interpol to harass opponents is notorious;" and (5) neither a Blue Notice nor a Red Notice is a basis for arrest. *Id.* at 22–29.

any arrests or convictions. *Id.* ¶ 60. As to that first arrest, Plaintiff alleges that, at the time of the arrest, he was "lawfully admitted to the United States on a visitor visa, which had not been revoked," and had "remained in the United States in a period of stay explicitly authorized by DHS and had never been unlawfully present in the United States under federal law." *Id.* ¶¶ 5–6. In short, Plaintiff alleges that he was arrested without probable cause. In addition, Plaintiff alleges that the Interpol's Blue Notice referenced in the arrest report contained various errors, failed to meet Interpol's criteria for publication, should not have been published, and in any event, does not provide probable cause for an arrest in the United States. *Id.* ¶¶ 8, 62–70.

The Notice to Appear, charging Plaintiff with unlawfully remaining in the United States for a period longer than permitted, was served on Plaintiff while he was at the Krome Detention Center, and filed with the immigration court one week after the arrest. *Id.* ¶¶ 58, 72. Plaintiff states that at Krome, he was asked "to sign documents admitting he had violated immigration laws and facilitating his removal" but that he refused. *Id.* ¶ 72. Plaintiff also alleges that he "was housed on the second floor, forcing him to use stairwells, despite his multiple requests to be moved to the first floor on account of his lower back pain issues." *Id.* ¶ 73. Ultimately, over one month later, on December 18, 2019, Plaintiff was released from Krome on a $12,000 immigration bond based on the immigration judge's determination that the Interpol Blue Notice did not make Plaintiff a danger to the community or a flight risk. *Id.* ¶¶ 75–80.

On August 3, 2020, USCIS notified Plaintiff that he was required to appear for a second interview to adjudicate the immediate relative petition filed by his daughter. *Id.* ¶ 86. At that time, USCIS had already approved the petition his daughter had filed for her mother's benefit. *Id.* ¶ 82. In anticipation of the second interview, Plaintiff's daughter made "a written request to waive her father's appearance at the interview, citing 'panic attacks' and other conditions which . . . he had

developed as a result of being arrested at his last interview . . . ."  *Id.* ¶ 89.  Plaintiff also followed

up with that request via certified mail.  *Id.* ¶ 91.  Although waivers of attendance for adjustment

of status applicants are permitted, USCIS never responded to the waiver request.  *Id.* ¶¶ 88, 92.

Plaintiff alleges that the day before the interview, he visited an urgent care facility because he was

experiencing "severe back pain."  *Id.* ¶ 93.  The urgent care doctor "prescribed [Plaintiff]

medicines and gave him an injection in his lower back along with a support belt that Plaintiff was

instructed to wear at all times, and Plaintiff was instructed to avoid various forms of physical

activity, including driving."  *Id.*

   At 8:30 a.m. on September 23, 2020, the date of the second interview, Plaintiff's daughter,

who was accompanied by an immigration attorney, appeared in-person at a USCIS Field Office

and again requested a waiver of her father's appearance, authorization for her father to appear via

teleconference, or that the interview be rescheduled.  *Id.* ¶¶ 95–97.  The USCIS officer, after

consulting with supervisors, rejected the waiver request and the medical evidence submitted in

support, and insisted that Plaintiff appear for the interview in person by 11:30 a.m.  *Id.* ¶ 98.

However, at approximately 9:48 a.m., Plaintiff was arrested by ICE agents outside of his

condominium while he was headed to the USCIS interview.  *Id.* ¶¶ 99–101.  Plaintiff states that

the two officers approached him, one drew a firearm, and that they "made him exit his car,

handcuffed him, searched his car, [] placed him under arrest without a warrant and without first

reviewing his immigration file," and took him into custody.  *Id.* ¶¶ 101–103, 120.

   The Amended Complaint alleges that the arrest report states that: (1) Plaintiff unlawfully

remained in the United States for a period longer than permitted because he overstayed his visa;

(2) Plaintiff failed to appear for a USCIS interview scheduled for the previous day (although it

appears that the USCIS interview was set to take place later that day); (3) Interpol issued a

Diffusion Notice for Plaintiff on June 30, 2020; and (4) Plaintiff was the subject of an Interpol Red Notice out of Russia on a manslaughter charge (although Plaintiff alleges that "ICE and DHS misrepresented that a Red Notice had been issued for Plaintiff, when only a Diffusion had been issued"). *Id.* ¶¶ 106–08, 111, 157.[3]  The arrest report again indicated that Plaintiff did not have any criminal history in the United States. *Id.* ¶ 111.  On the same day, ICE "arbitrarily cancelled" Plaintiff's previous $12,000 "immigration judge-issued bond—not due to any breach, but for appearing to have been satisfied." *Id.* ¶¶ 1, 109–10 (quotations omitted).  Specifically, Plaintiff alleges that "ICE cancelled the bond and re-detained Plaintiff without a prior hearing before the immigration judge." *Id.* ¶ 110.  Again, Plaintiff alleges that the Interpol Red Notice does not constitute a valid basis for arrest. *Id.* ¶ 115.  Moreover, he alleges that as of the date of the filing of the Amended Complaint, he has not received a copy of the Interpol notice that was referred to in the second arrest report. *Id.* ¶ 118.

More than a week later, on October 2, 2020, Plaintiff was released from Krome on a $15,000 immigration bond when the immigration judge determined that an Interpol notice did not make Plaintiff a danger to the community or a flight risk. *Id.* ¶¶ 123–27.  Thereafter, on September 30, 2020, USCIS approved the petition filed by Plaintiff's daughter, making him eligible for lawful permanent residence. *Id.* ¶ 129.  Plaintiff alleges that as a result of the approved petition, he "is *prima facie* eligible for adjustment" of status to a legal permanent resident." *Id.* ¶ 19.

---

[3] In his report, Dr. Bromund states that "[d]iffusions are transmitted by one member nation directly to one or more other nations (Interpol is copied in) and are used to seek information or request cooperation." ECF No. [12-1] at 9.  Dr. Bromund further states that "[d]iffusions can seek to a) arrest, detain or restrict the movements of a convicted or accused person; (b) locate and trace; (c) seek additional information; (d) for identification purposes; (e) warn about a person's criminal activities; or (f) provide information." *Id.* at 12.

## II.    THE AMENDED COMPLAINT

On February 5, 2021, Plaintiff filed an Amended Complaint "to challenge his unlawful seizure and related treatment by [ICE and DHS] agents." *Id.* ¶ 1.  The crux of the Amended Complaint is that Plaintiff was unlawfully arrested by ICE agents on two occasions, and that his arrests were unrelated to his removal or any valid immigration process.  Specifically, as to his first arrest, Plaintiff alleges that the ICE agents did not have probable cause of removability because removal proceedings had not yet commenced.  Instead, the sole basis for the arrest was the issuance of an Interpol Blue Notice, which pursuant to Defendants' policies, does not constitute sufficient probable cause of removability to justify an arrest.  Indeed, as noted in the hearing before the Court, Plaintiff seeks to challenge what it claims is the Government's practice of arresting individuals solely on the basis of Interpol Notice, in this case issue by the Russian government, without more.  Second, Plaintiff argues that the sole basis for his second arrest was the issuance of an Interpol Diffusion Notice, which, pursuant to Defendants' policies, does not constitute probable cause.  Specifically, Plaintiff seeks to challenge "his detention, arrests, and related treatment by ICE officers on both occasions . . . as well as ICE and DHS' related policy and practice, seeking declaratory relief under the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Administrative Procedures Act . . . , as well as damages under the Fourth Amendment and the Federal Tort Claims Act . . . . *Id.* ¶ 21.

The Amended Complaint asserts the following causes of action: (1) one count for unconstitutional seizure in violation of the Fourth Amendment against DHS and ICE in connection with Plaintiff's first arrest (Count I); (2) one count for violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) (the "APA"), against DHS and ICE in connection with Plaintiff's first arrest (Count II); (3) one count for violation of Plaintiff's Fifth Amendment due process rights against

DHS and ICE in connection with Plaintiff's second arrest (Count III); (4) one count for unconstitutional seizure in violation of the Fourth Amendment and for *Bivens* damages against Defendant Angulo in connection with Plaintiff's first arrest (Count IV); (5) one count for unconstitutional seizure in violation of the Fourth Amendment and for *Bivens* damages against Defendant Williams in connection with Plaintiff's first arrest (Count V); (6) one count for false imprisonment under the Federal Tort Claims Act (the "FTCA") against the United States relating to the first arrest (Count VI); (7) one count for negligence under the Federal Tort Claim Act against the United States relating to both arrests (Count VII); and (8) one count for violation of the Florida Constitution under the Federal Tort Claim Act against the United States relating to the second arrest (Count VIII). *See id.* Plaintiff seeks: (1) a declaration that DHS and ICE agents violated his Fourth Amendment rights by detaining and arresting him while he was in a period of authorized stay and had not been unlawfully present; (2) a declaration that DHS and ICE violated his Fifth Amendment rights in connection with the second arrest when they arrested him solely on the basis of an Interpol Blue Notice; (3) a declaration that DHS and ICE violated his Fifth Amendment due process rights when they detained him post-bond on the basis of a material misrepresentation; (4) compensatory and punitive damages against Defendants Angulo Williams; (5) compensatory and punitive damages against the United States; and (6) attorneys' fees and costs under the Equal Access to Justice Act. *Id.* at 26–27.

On July 26, 2021, after the filing of the Amended Complaint, Plaintiff's removal case was dismissed. *See* ECF No. [24-1] at 2 ("As per the Service Motion, the Department of Homeland Security is exercising their Prosecutorial discretion following a determination that the circumstances of this case changed after the notice to appear was issued to such extent that continuation is no longer in the best interest of the government.") (citations omitted).

## III.    THE INSTANT MOTION TO DISMISS

Defendants filed the instant Motion to Dismiss, setting forth various reasons as to why the Amended Complaint should be dismissed in its entirety.  ECF No. [18].  Plaintiff subsequently filed his Response, ECF No. [21], and Defendants filed their Reply, ECF No. [22].

### A.  Defendants' Motion to Dismiss

First, Defendants argue that this Court lacks jurisdiction over the case under several provisions of the Immigration and Nationality Act (the "INA") that limit a federal court's jurisdiction to review immigration decisions.  Defendants argue that pursuant to 8 U.S.C. § 1252(g), this Court lacks jurisdiction because Plaintiff's claims relate to DHS' discretionary decision to commence proceedings against Plaintiff and to adjudicate the case against him.  ECF No. [18] at 6–11.  Defendants also argue that 8 U.S.C. § 1252(b)(9) deprives the Court of jurisdiction because Plaintiff is improperly challenging actions taken by Defendants to remove Plaintiff.  *Id.* at 9.  Defendants argue that 8 U.S.C. § 1226(e) deprives the Court of jurisdiction because Plaintiff is challenging Defendants' decision to arrest and detain Plaintiff pending removal.  *Id.* at 10.  Finally, Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the Court of jurisdiction because Plaintiff is challenging Defendants' discretionary determination that pre-removal detention was appropriate, and that re-detention based on a change of circumstances was warranted.  *Id.* at 10–11.

Second, Defendants argue that even if the Court had jurisdiction to review this matter, all of Plaintiff's claims fail because ICE and DHS had probable cause of removability to arrest Plaintiff based on the fact that he had illegally overstayed his visa at the time of his arrests.  *Id.* at 11.  Defendants maintain that Plaintiff's asylum petition did not confer lawful immigration status, rather it only permitted Plaintiff to remain in the United States while the petition was pending.  *Id.*

at 11–14.  Specifically, Defendants argue that whether ICE relied on the Interpol notices and diffusions as a basis for the arrest is irrelevant because Plaintiff was in fact removable.  *Id.* at 14 n.9.  Thus, Defendants submit that whether there was probable cause to arrest is irrelevant.  *Id.*

Third, Defendants Angulo and Williams argue that they are entitled to qualified immunity as to Counts IV and V for violations of the Fourth Amendment in connection with the first arrest. *Id.* at 14–15.  Defendants Angulo and Williams submit that because Plaintiff was removable at the time of the first arrest, they had probable cause.  *Id.* at 16.

Fourth, Defendants argue that the Amended Complaint fails to establish a case or controversy or Article III standing as to Counts I, II and III.  16–17.  Defendants first argue that the Amended Complaint does not sufficiently establish that there is a substantial likelihood of future harm because the allegation that Plaintiff fears he will be arrested in the future is not enough. *Id.* at 17.  Moreover, as to the first arrest, Defendants argue that there is no substantial likelihood that removal proceedings will be re-initiated or that he will again be arrested on this basis.  *Id.*  As to the second arrest, Defendants argue that there is no allegation in the Amended Complaint to establish a substantial likelihood that an additional Interpol notice of diffusion will be issued or that, even if issued, Plaintiff would again be arrested on this basis.  *Id.*

Fifth, as to Count II for violation of the APA in connection with the first arrest, Defendants argue that the Amended Complaint fails to state a claim.  *Id.* at 18–19.  Specifically, Defendants argue that the Amended Complaint fails to allege a final agency action subject to judicial review because Plaintiff's arrest was only the initial step in determining whether Plaintiff was removable and not a "consummation of [Defendants'] decision making process."  *Id.* at 18.  Instead, because an immigration judge is charged with ultimately determining removability, a final agency action is not made until the judge's decision is final.  *Id.*  Thus, Defendants submit that Plaintiff's arrest

did not "determine any rights or obligations." *Id.*

Sixth, Defendants argue that Plaintiff has failed to state a claim as to Count III for violation of the Fifth Amendment in connection with the second arrest. *Id.* at 18–19. Defendants argue that Plaintiff's claim fails because: (1) "if anything, [he] would only state a claim for Fourth Amendment violations"; (2) any issue with the immigration judge's reliance on the Interpol notices and ultimate bond determination can only be addressed through the immigration court system; (3) Plaintiff has not sufficiently alleged that Defendants failed to follow their own procedures; and (4) Defendants properly relied on an Interpol Red Notice and Diffusion Notice to justify Plaintiff's second arrest. *Id.* at 18–20.

Finally, Defendants argue that the Amended Complaint fails to state a claim as to Count VII for negligence under the FTCA because certain exceptions to the statute are applicable. *Id.* at 20. Defendants first argue that Plaintiff's claim is barred by the discretionary function exception to the FTCA because "the purported misrepresentation that [Plaintiff] was authorized to remain in the United States [while his asylum application was pending] involved an element of judgment or choice because DHS exercised its judgment in choosing how to communicate DHS policies to the general public." *Id.* at 21. Defendants argue that this allegation is also barred by the misrepresentation exception to the FTCA because Plaintiff's claim is based on the notion that DHS made a statement that Plaintiff could remain in the United States while his asylum application was pending, which was inconsistent with the decision to subsequently commence removal proceedings against Plaintiff. *Id.* at 22. Moreover, Defendants argue that Plaintiff's allegation "that DHS and ICE acted negligently in placing [Plaintiff] into custody without a back supporting belt, is likewise barred by the discretionary function exemption because it concerned the discretionary decision of when, how, and under what particular circumstances to arrest [Plaintiff]."

*Id.* at 21.  Finally, Defendants argue that Plaintiff's allegation that DHS and ICE failed to train and supervise their employees is also subject to the discretionary function exception because it is "grounded on the policy considerations of how to train and supervise employees, with no specific statutory guidance." *Id.* at 21–22.[4]

### B.  Plaintiff's Response

In response, Plaintiff argues that the Motion to Dismiss mischaracterizes his claims.  ECF No. [21] at 2.  Plaintiff states that he "brought this action to challenge the manner and circumstances of (including the agency practices that led to) his warrantless arrest, detention, and related treatment by officers of" ICE and DHS "on two occasions." *Id.* at 1.  Thus, Plaintiff states that he does not challenge his actual removability and that he "agrees with Defendants that the ultimate determination of his actual removability as charged under 8 U.S.C. § 1227(a)(1)(B) lies with an immigration judge rather than this Court." *Id.*  As such, Plaintiff submits that the Amended Complaint only challenges "the manner in which and the authority under which Defendants arrested and detained [him] under the specific circumstances of this case, and while he remained present in the United States pursuant to DHS policy and a statute that provides him an authorized period of stay with no accrued unlawful presence." *Id.* (quotations omitted).

Specifically, Plaintiff first argues that this Court has jurisdiction over all the claims asserted in the Amended Complaint.  *Id.* at 5.  Plaintiff argues that Section 1252(g) does not deprive the Court of jurisdiction because none of the claims asserted relate to Defendants' decision to commence proceedings, adjudicate cases, or execute removal orders.  *Id.* at 5–6.  As to the first

---

[4] Defendants argue that the Amended Complaint failed to state a claim as to Count VIII for violation of the Florida Constitution under the FTCA because "[s]tate constitutional torts claims are not cognizable under the" FTCA.  *Id.* at 22 (quotations and citations omitted).  Plaintiff concedes this argument, and therefore, Count VIII should be **DISMISSED WITH PREJUDICE**.

arrest, Plaintiff notes that the Amended Complaint states that he was arrested without a warrant and prior to the service of the Notice to Appear, and as result, Plaintiff challenges wrongdoing that occurred before proceedings ever commenced. *Id.* at 7–8. As to the second arrest, Plaintiff argues that he challenges the manner in which he was arrested, that is without notice and without a change in circumstance to warrant the arrest. *Id.* at 7. Plaintiff further argues that Section 1252(b)(9) does not deprive the Court of jurisdiction over any of the claims in the Amended Complaint because he does not seek review of a removal order and the resolution of this case will not have any effect on Plaintiff's removal proceedings. *Id.* at 9–10. In addition, Plaintiff argues that Section 1226(e) does not deprive the Court of jurisdiction over any of Plaintiff's claims because he does not challenge any detention determination, rather he challenges the method in which he was arrested. *Id.* at 11–12. Finally, Plaintiff argues that Section 1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction because he does not challenge any discretionary actions, as Defendants do not have discretion to disregard DHS policy or Plaintiff's constitutional rights. *Id.* at 12.

Second, Plaintiff argues that he has standing to seek declaratory relief in Counts I, II, and III because the Amended Complaint sufficiently alleges that he is likely to be arrested again under similar circumstances. *Id.* at 12. Specifically, the Amended Complaint alleges that Plaintiff was "arrested unlawfully or pursuant to an unlawful practice on two occasions in connection with Interpol notices or diffusions, including after his first release on bond by his immigration judge after finding him not to be a danger or threat." *Id.* at 12–13 (citations omitted). Moreover, the Amended Complaint alleges, through the declaration submitted, "the existence of a common pattern whereby lawfully admitted asylum seekers are arrested for overstay, on the basis of abusive Interpol notices." *Id.* Thus, Plaintiff submits that the Amended Complaint sufficiently alleges a lack of clarity regarding Defendants' policies that creates "a direct and immediate dilemma for

[Plaintiff], regarding the proper course of action to avoid detention moving forward while pursuing his immigration proceedings." *Id.* (quotations and citations omitted).

Third, Plaintiff argues that Defendants Angulo and Williams are not entitled to qualified immunity because they lacked probable cause to arrest Plaintiff. *Id.* at 13. As to the first arrest, Plaintiff argues that Defendants Angulo and Williams did not have probable cause of removability or "arguable probable cause" because they arrested him in contravention of USCIS policy that granted an authorized period of stay. *Id.* at 14–15.

Fourth, Plaintiff argues that the Amended Complaint sufficiently states an APA claim in Count II. *Id.* at 15. Specifically, Plaintiff argues that he does not challenge his removability or removal proceedings, rather he challenges the circumstances and manner of his arrest, namely "DHS' alleged policy and practice of arresting people with arbitrary disregard of its unambiguous written policies (which implement the INA by authorizing a period of stay for certain USCIS applicants), while at the same time advising them that their presence in the United States is authorized." *Id.*

Fifth, Plaintiff argues that the Amended Complaint sufficiently states a Fifth Amendment due process claim in connection with the second arrest in Count III. *Id.* at 17. Specifically, Plaintiff notes that in Count III, he alleges that "Defendants ICE and DHS must adhere to their own procedures regarding rearrest of individuals who have been released on bond," and that Defendants violated their policy "not to re-arrest individuals who are out on bond" absent a material change in circumstances. *Id.* (citations omitted). In addition, the Amended Complaint alleges that Defendants deprived Plaintiff of his due process rights when they misrepresented that an Interpol Red Notice had been issued as the basis for the second arrest. *Id.* at 17–18.

Finally, Plaintiff argues that the Amended Complaint states cognizable claims under the

FTCA in Count VII. *Id.* at 19. Plaintiff maintains that Defendants breached their duty of care when they "undertook upon processing [Plaintiff's] asylum and immigration cases—with his liberty clearly at stake." *Id.* at 19. Specifically, Plaintiff states that the misrepresentation exception does not apply because "DHS undertook to provide [Plaintiff] immigration services, and he reasonably relied upon their express and implied assurances that, as a result of those services, he was authorized to remain in the United States while his asylum and adjustment of status applications were pending." *Id.* In addition, Plaintiff argues that the discretionary function exception does not apply because Defendants' actions violated their own policies. *Id.* at 20–21.

### C.  Defendants' Reply

In their Reply, Defendants re-assert that the Court does not have jurisdiction over any of Plaintiff's claims because the INA bars a judicial determination of whether an alien is removable, which is what this Court would have to determine in order to ascertain whether Defendants had probable cause to arrest Plaintiff. ECF No. [22] at 8. Defendants re-state that Plaintiff's two arrests were supported by probable cause because Plaintiff overstayed his visa and was therefore removable. *Id.* at 4. To that extent, Defendants Williams and Angulo maintain that they are entitled to qualified immunity as to the claims for violations of the Fourth Amendment (Counts IV and V) because there is no indication that "Defendants lacked probable cause to arrest him as removable for overstaying his visa . . . ." *Id.* at 6. Moreover, Defendants emphasize that Plaintiff lacks standing to seek declaratory relief because the Amended Complaint merely states that because Plaintiff was arrested twice, he could be arrested again. *Id.* Thus, Defendants argue that "there is no non-speculative reason to suspect future arrests made for similar reasons to the First [Arrest] (initiation of removal proceedings) or the Second [Arrest] (change in circumstances following Red Notice or Diffusion)." *Id.* at 12. Defendants maintain that the Amended Complaint

fails to state a claim as follows: (1) Count II under the APA should be dismissed because Plaintiff's "claim is squarely a challenge to his arrest, and because it does not allege any final agency action, and because he (in any event) does not allege any improper policy causally related to his arrest"; (2) Count III for a due process violation fails because the Amended Complaint "squarely alleges that DHS did follow its own policy in that it rearrested [Plaintiff] only following an apparent material change in circumstances—the issuance of the Diffusion"; and (3) Count VII for negligence fails because the allegations pertain to Defendants' discretionary authority regarding how to effectuate arrests. *Id.* at 7–8, 12.

## IV.    ANALYSIS

Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the claim and, as such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when it states enough facts for the court to draw a "reasonable inference that the defendant is liable for the" alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.* When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, a court need not accept plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamed v. Palestinian Auth.*, 566 U.S. 449 (2012).

### A.    The Court Has Jurisdiction Over Plaintiff's Claims Relating To The First Arrest, But Not Over Claims Relating To The Second Arrest.

Defendants argue that Sections 1252(g), 1252(b)(9), 1226(e), and 1252(a)(2)(B)(ii) deprive

the Court of jurisdiction over all of Plaintiff's claims.  ECF No. [18] at 6–11.  For the reasons stated below, the Court concludes that it is not divested of jurisdiction over the claims related to the first arrest but is divested of jurisdiction over claims related to the second arrest.

### 1.  Section 1252(g)

The first issue before the Court is whether the two arrests arise from the commencement or adjudication of removal proceedings against Plaintiff.  Section 1252(g) of the INA prohibits federal courts from exercising subject matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings against any alien . . . ."  8 U.S.C. § 1252(g).  Pursuant to long-standing Supreme Court precedent, that section is to be read as a very narrow provision that only applies to three discrete actions that the Attorney General may take, specifically, the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quotations omitted).  Thus, there are actions that are part of an immigration process that are not covered by Section 1252(g), "such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order."  *Id.*  In sum, Section 1252(g) does not cover "the universe of deportation claims," is not a "shorthand way of referring to all claims arising from deportation proceedings," and is not a "general jurisdictional limitation," rather only the three listed items are excluded from judicial review.  *Id.*; *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (concluding that Section 1252(g) neither covers "all claims arising from deportation proceedings [n]or imposes a general jurisdictional limitation," and as such, "[t]he rescission, which revokes a deferred action program with associated benefits, is not a decision to

commence proceedings, much less to adjudicate a case or execute a removal order") (citations and quotations omitted).

In this case, each arrest should be analyzed separately.  As to the first arrest, Defendants unequivocally state that Plaintiff was arrested because he overstayed his visa.   ECF No. [22] at 4. As to the second arrest, Defendants argue that cancelling the bond was either part of the adjudication of the case, or a discretionary function relating to Plaintiff's detention that is not reviewable by this Court.  *Id.* at 9.  To be sure, if Plaintiff were arrested because he overstayed his visa, the analysis the Court would engage in would be quite different.  But Defendants' statement that Plaintiff was arrested because he overstayed ignores the allegations in the Amended Complaint–allegations that the Court must accept as true.  Indeed, Plaintiff alleges that as to the first arrest, the removal proceeding began *after* he was arrested, and as such, the arrest could not be part of the commencement of the action.  Thus, the crux of the argument, if not the entire case, is that Defendants arrested Plaintiff not as part of any immigration action but based on an Interpol Blue Notice from Russia, which could not form the basis for any arrest.  As to the second arrest, Plaintiff argues that although removal proceedings were underway, Defendants re-arrested him based on misrepresentations about an Interpol Red Notice, which in any event could not amount to a material change to warrant the cancellation of his bond and his re-arrest.

The Court finds that the first arrest, at least as the case is plead before the Court, is not part of the commencement of a proceeding such as to bar this Court's jurisdiction over claims relating to it.  As to the second arrest, however, Plaintiff's claims require this Court to review whether the information considered to cancel his bond (which led to the re-arrest) was sufficient.  Such an analysis, however, appears to be barred by the INA.

The Government relies on *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013), in support

of the proposition that securing an alien pending removal constitutes an action to commence removal proceedings and is not subject to the Court's jurisdiction.  In that case, Gupta was served with a notice to appear and arrested by ICE after his application for adjustment of status was denied.  *Id.* at 1063–64.  Gupta subsequently filed suit, claiming that the ICE "agents violated his rights under the Fourth and Fifth Amendments by wrongfully procuring a warrant for his arrest, arresting him unlawfully, illegally searching his apartment and car, illegally seizing his personal items, and wrongfully detaining him . . . ."  *Id.* at 1064.  The Eleventh Circuit Court of Appeals determined that Gupta's claims were subject to dismissal because "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings," particularly where "[e]ach of Gupta's claims allege, as his direct injury, an action taken to secure him and prevent the perceived threat he posed . . . ."  *Id.*  at 1065.[5]

The Court finds that the allegations of the Amended Complaint, which at this stage must be accepted as true, do not support the conclusion that the first arrest was part of the commencement or adjudication of removal proceedings.  Indeed, the allegations clearly state that the Notice to Appear was served after the arrest when Defendant was already detained at the Krome Detention Center and not filed with the immigration court until a week after the arrest.  A removal proceeding commences upon the service of a notice to appear.  *See Gonzales v. FedEx Ground Package Sys., Inc*, No. 12-CV-80125, 2013 WL 12080223, at *9 (S.D. Fla. Aug. 1, 2013*)*.  In *Gonzales*, for example, ICE arrested the plaintiff at a FedEx facility after it was notified that the plaintiff was the recipient of a package that contained various Guatemalan passports.  *Id.* at *1.

---

[5] Plaintiff suggests that *Gupta* was superseded by the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  However, the Court in *Jennings* merely alluded to its narrow interpretation of the phrase "arising from" as stated in Section 1252(g) in addressing the scope of a similar statutory provision, 8 U.S.C. § 1252(b)(9).  *Id.* at 840–41.  Accordingly, the holding in *Gupta* was in no way affected by *Jennings*.

The plaintiff was subsequently taken to an immigration facility where he ultimately signed an order of removal. *Id.* at *2. The Court concluded that Section 1252(g) did not divest it of jurisdiction over the plaintiff's *Bivens* claims because ICE's alleged misconduct did not arise from the decision to commence removal proceedings. *Id.* at *10. Specifically, the Court explained that, unlike *Gupta*, because a notice to appear was not served and an arrest warrant was not executed, the plaintiff's allegations stemmed from ICE's conduct before the initiation of removal proceedings. *Id.* at *10. The Court noted that "the fact that removal proceedings were ultimately initiated is not enough to divest th[e] Court of jurisdiction." *Id.*

Likewise, the alleged wrongful conduct here stemming from the first arrest occurred *before* Plaintiff was served the Notice to Appear and, therefore, *before* removal proceedings were initiated. Without the benefit of discovery, the allegations here are factually distinguishable from *Gupta* as to the first arrest. Although discovery in the case might show what the Government argues, namely that Plaintiff's arrest was in connection with the removal proceeding, the Court must look to the allegations in the Amended Complaint. Those allegations do not support the Government's argument, at least as to the first arrest. *See, e.g.*, *Najera v. United States*, 926 F.3d 140, 141 (5th Cir. 2019) (concluding that Section 1252(g) did not deprive the court of jurisdiction over the plaintiff's claims where "ICE filed the charging document—the notice to appear—with the [] Immigration Court . . . two days after [the plaintiff's] release from his allegedly false imprisonment"); *Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 895 (N.D. Ill. 2020) (concluding that Section 1252(g) did not deprive the court of jurisdiction over the claims against ICE because the alleged wrongdoing "occurred well before the government decided to initiate removal proceedings against [p]laintiffs, and therefore does not arise from the prosecutorial decisions listed in Section 1252(g)") (quotations and citations omitted); *Medina v. U.S. Dep't of*

*Homeland Sec.*, No. C17-218-RSM-JPD, 2017 WL 2954719, at *16 (W.D. Wash. Mar. 14, 2017), *report and recommendation adopted*, 2017 WL 1101370 (W.D. Wash. Mar. 24, 2017) (concluding that Section 1252(g) did not deprive the court of jurisdiction over the "[p]etitioner's constitutional claims regarding his arrest and detention [because they] relate only to events that occurred prior to the decision to commence removal proceedings by filing a Notice to Appear").

Moreover, the Government's reliance on *Alvarez v. U.S. Immigration & Customs Enforcement*, 818 F.3d 1194 (11th Cir. 2016), is instructive as to whether the arrests at issue are subject to this Court's jurisdiction. In *Alvarez*, the Eleventh Circuit considered whether Sections 1252(g) applied to the claims that: (1) ICE's counsel refused to enter into a stipulated order of removal; (2) ICE failed to honor its commitment to reach a timely determination of the plaintiff's immigration status, but instead subjected him to pre-removal detention; and (3) after the plaintiff was ordered removed, the defendants waited until the last possible day to determine that the plaintiff could not be removed to his home country of Cuba in the foreseeable future. *Id.* at 1196–98. The Court first concluded that "ICE's decision to require [the plaintiff] to attend removal proceedings—rather than agreeing to a stipulated order—fell squarely within the scope of § 1252(g)" because adjudication of that claim would require the Court "to find that the agency should have chosen a different method of commencing proceedings." *Id.* at 1203. Next, the Court concluded that "ICE's decision to take [the plaintiff] into custody and to detain him during his removal proceedings . . . [was] closely connected to the decision to commence proceedings." *Id.* Relying on the holding in *Gupta*, the Court concluded that the plaintiff's claim was within the purview of Section 1252(g) because he challenges the method ICE used to detain him "by means of misrepresentations and disregard for the Department of Justice's commitment in his plea agreement." *Id.* at 1203–04. However, the Court concluded that Section 1252(g) did not apply to

the claims "that the defendants took various steps in order to prolong his detention after the statutory 90–day period that ICE was afforded to execute his removal . . . ." *Id.* at 1204. The Court explained that this claim does not arise from the decision to execute removal orders because "a claim that arises from the decision to indefinitely detain an alien—and thus, by definition, never to remove him—cannot arise from the decision to execute removal." *Id.* at 1204–05.

As to the second arrest, however, Defendants are correct that the claim squarely concerns whether the Interpol Diffusion Notice or Red Notice presented a sufficient basis to cancel Plaintiff's bond and re-arrest him. The adequacy of the Interpol Notice is a claim that would have been addressed by the immigration judge who heard the bond issue and apparently concluded that the Interpol Notices were not sufficient to change his detention status. The Court understands Plaintiff allegations to include the claim that the Government misrepresented the issuance of an Interpol Red Notice to the immigration court in order to have the bond cancelled. However, such an action would still be part of the adjudication of the removal proceeding that, at that point, had already commenced. As such, the Court is barred from reviewing the claims related to the second arrest.

### 2. Section 1252(b)(9)

Section 1252(b)(9), also known as the "zipper clause," precludes judicial review of claims "brought to remove an alien." 8 U.S.C. § 1252(b)(9); *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020). As with Section 1252(g), the Supreme Court has cautioned that it should be narrowly construed, as it "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents*, 140 S. Ct. at 1907 (alterations adopted and quotations omitted); *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) (noting that Section 1252(b)(9)

does not apply to cases that do "not involve review of an order of removal").

In this case, Section 1252(b)(9) is inapplicable to Plaintiff's claims stemming from the first arrest because Plaintiff does not seek review of an order of removal, the decision to seek removal, or the process by which removability is determined. Instead, the Amended Complaint only challenges the authority under which Plaintiff was arrested, which Plaintiff claims runs afoul of the Constitution and Defendants' policies. *See Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020) (noting that "[t]he zipper clause is not intended to cut off claims that have a tangential relationship with pending removal proceedings"); *Medina*, 2017 WL 2954719, at *15 (concluding that Section 1252(b)(9) does not bar claims that are independent from removal orders). As to the second arrest, because the removal proceedings were already underway, the decision to cancel the bond and arrest Plaintiff are part of the decision to detain an alien, which this Court is barred from reviewing. *See Jennings*, 138 S. Ct. at 841 (noting that Section 1252(b)(9) deprives courts of jurisdiction over a challenge to the decision to detain an alien and to seek removal).

### 3. Section 1226(e)

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). Thus, Section 1226(e) "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings*, 138 S. Ct. at 841 (alterations adopted and quotations omitted) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)).

In this case, Plaintiff's claims related to the first arrest are not within the purview of Section 1226(e) because Plaintiff does not ask this Court to set aside any action or decision with respect to detention.  Specifically, Plaintiff does not challenge Defendants' decision to detain him pending removal.  Instead, Plaintiff claims that the first arrest was unrelated to the removal proceedings because it was conducted before removal proceedings commenced.  Thus, Plaintiff argues that the only basis for the arrest was the issuance of an Interpol Blue Notice, which pursuant to Defendants' policies, cannot establish probable cause to arrest.  Such a claim is not barred by the statute.

However, as to the second arrest, Plaintiff argues that the only justification for the arrest was the issuance of an Interpol Diffusion Notice, and more precisely, an alleged misrepresentation made as to whether a Red Notice or a Diffusion Notice was issued in order to cancel the bond.  Although the Court is mindful that Plaintiff is not requesting that the bond decision be set aside, a request that would be plainly without merit, the circumstances of the second arrest fall squarely within the decision to detain or provide a bond.  The fact that Plaintiff is not asking the Court to review the bond determination is a function of the fact that Plaintiff received a bond, not a function of some other review that would evade the INA's limitation of the Court's jurisdiction.  Accordingly, the Court concludes that Section 1226(e) deprives the Court of jurisdiction only over claims related to the second arrest.

### 4.  Section 1252(a)(2)(B)(ii)

Section 1252(a)(2)(B)(ii) provides that "courts do not have jurisdiction to review 'discretionary decisions or actions of the Attorney General or DHS Secretary.'"  *Daniel v. Castro*, 662 Fed. App'x 645, 648 (11th Cir. 2016) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).  This Court's holding in *Dos Santos v. Meade*, No. 1:20-CV-22996, 2020 WL 6565212 (S.D. Fla. Nov. 9, 2020), is instructive.  In that case, DHS issued a notice to appear alleging that the petitioner and his wife

were removable for overstaying their visa. *Id.* at *1.  After approximately four years, the petitioner and his wife were detained by immigration officials following the issuance of a Brazilian *in absentia* criminal conviction against them.  *Id.*  An immigration judge conducted a detention hearing and granted a bond and, in the interim, the petitioner appealed his Brazilian conviction. *Id.*  Once the Brazilian conviction became final, ICE re-detained the petitioner, claiming that the finality of the conviction was a material change in circumstance.  *Id.* at *2.  The petitioner filed a habeas petition "for (1) unlawful detention in violation of the Due Process Clause of the Fifth Amendment (Count I) and (2) violation of the Administrative Procedure Act (Count II)."  *Id.*  The petitioner challenged the "legality of his detention," arguing that his *in absentia* conviction "does not qualify as a material change in circumstances warranting detention."  *Id.* at *3.  In addition, the petitioner argued that the defendants "violated his Fifth Amendment due process rights by unlawfully detaining him without notice and proof of a material change in circumstances."  *Id.*

In finding that the Court did not have jurisdiction to hear the matter, this Court noted that "[i]f a warrant is issued by the Attorney General, 'an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.'"  *Id.* at *3 (quoting 8 U.S.C. § 1226(a)) (footnote omitted).  And, "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody upon a Warrant of Arrest issuing," within the Attorney General's discretion. *Id.* (quoting 8 C.F.R. § 1236.1(b)(1)) (alterations adopted).  Thus, this Court concluded that because the petitioner was detained pursuant to the Attorney General's discretion to detain alien's pending removal, the Court did not have jurisdiction to consider the habeas petition under various provisions of the INA, including Sections 1252(g), 1226(e), and 1252(a)(2)(B)(ii).  *Id.* Specifically, the Court concluded that it did not have jurisdiction because the plaintiff "essentially

asks the Court to make a merits determination as to whether the *in absentia* conviction qualifies as a material change in circumstances warranting his detention." *Id.* The Court explained that the facts "clearly demonstrate that ICE detained Petitioner a second time pursuant to its discretion and based on its determination that (1) Petitioner's *in absentia* conviction became final after Petitioner's original bond determination, and (2) the finality of Petitioner's *in absentia* conviction constituted a change in circumstances such that Petitioner might flee." *Id.* at *4.

The facts here are distinguishable only as to the first arrest. Specifically, Plaintiff does not take issue with Defendants' exercise of their discretion in arresting aliens pending removal. Instead, Plaintiff claims that his first arrest could not have been related to removal proceedings given that the Notice to Appear was served after his arrest and filed a week later in immigration court. In addition, Plaintiff argues that because he was not unlawfully present, there was no probable cause of removability to justify the arrest.

As to the second arrest, Plaintiff argues that there was no material change in circumstance to justify a re-arrest because the issuance of an Interpol Diffusion Notice is, pursuant to Defendants' policies, insufficient to establish probable cause of removability. However, as in *Dos Santos*, the Court does not have jurisdiction to consider Plaintiff's claims because doing so would require the Court to make a determination as to whether an Interpol Diffusion Notice constitutes a material change in circumstance sufficient to support a re-arrest. As previously set forth, this is a consideration that the Court does not have jurisdiction to make. Thus, Section 1252(a)(2)(B)(ii) only deprives the Court of jurisdiction over claims related to the second arrest. [6]

---

[6] Because the Court concludes that it does not have jurisdiction to review claims related to the second arrest, it has no jurisdiction over Count III, the Fifth Amendment claim related to the second arrest. However, to the extent the District Court disagrees with the undersigned's determination regarding jurisdiction, Plaintiff has sufficiently stated a Fifth Amendment claim. The Amended Complaint alleges that Plaintiff's Fifth Amendment rights were violated at the time of the second

**B.  That Plaintiff Was Removable At The Time Of His Arrest, Is Not Sufficient To Bar The Claims As To The First Arrest.**

Defendants argue that even if the Court had jurisdiction over the claims pertaining to the first arrest, the claims fail because ICE and DHS had probable cause of removability to arrest Plaintiff given that he overstayed his visa.  ECF No. [18] at 11.  Defendants submit that the Interpol Notices and Diffusions are "irrelevant" because Plaintiff was "actually removable."  *Id.* at 14 n.9.  Defendants' argument that even if the officers arrested him for no valid reason, a valid reason otherwise did exist in this case because he was removable, is without any merit.

A warrantless arrest without probable cause violates the Fourth Amendment.  *See* U.S. Const. Amend. 4 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) ("A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence."); *Andrews v. Marshall*, 845 Fed. Appx. 849, 853 (11th Cir. 2021) ("A warrantless arrest without probable cause violates the Fourth Amendment . . . .").  The reasonableness of an arrest is guided by the existence of probable cause, which exists

---

arrest because DHS' policy is that it only re-arrests aliens after a material change in circumstances and the sole basis for the second arrest was the issuance of an Interpol Diffusion Notice and the Defendants' misrepresentation that a Red Notice had been issued.  ECF No. [12] ¶¶ 156–60.  Indeed, "in practice, the DHS re-arrests non-citizens only after a 'material' change in circumstances."  *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *2 (N.D. Cal. Aug. 23, 2020) (quoting *Ortega*, 415 F. Supp. 3d at 968).  And, agencies must comply with their own internal regulations.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954).  Assuming the Court had jurisdiction, and taking the allegations in the Amended Complaint as true, Plaintiff has sufficiently alleged that there was no change in circumstance to justify the second arrest because Defendants' policies dictate that an Interpol Notice is not sufficient to support an arrest, and that as such, that Defendants failed to follow their own policies when they solely relied on Interpol Notices in arresting Plaintiff.

when "officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)).  It follows that an arrest without probable cause violates the Fourth Amendment.  *Id.*  In the immigration context, the arresting officers must have probable cause to believe that the alien was illegally present in the United States.  *See Alcocer v. Mills*, 906 F.3d 944, 948 (11th Cir. 2018).

The sole case relied on by Defendants for their novel argument, *Manners v. Cannella*, 891 F.3d 959 (11th Cir. 2018), does not support their proposition.  In that case, the plaintiff filed a civil rights action under 42 U.S.C. § 1983 against two police officers for excessive force and malicious prosecution in connection with the plaintiff's traffic stop and subsequent arrest.  *Id.* at 966. In considering whether the officers were entitled to qualified immunity, the Eleventh Circuit noted that "[e]ach of [plaintiff]'s claims rises or falls on whether there was probable cause for his arrest."  *Id.* at 968.  The Court explained that "[i]n order to establish probable cause, an arrest must be objectively reasonable based on the totality of the circumstances," meaning that "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* (citations and quotations omitted).  Thus, probable cause to arrest exists if an officer has "probable cause to believe any crime was committed" even if it is an insignificant or minor criminal offense.  *Id.* at 969; *see Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007) (noting that "law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists") (emphasis in original).

In this case, the Amended Complaint alleges that: (1) "[w]hen ICE and DHS first arrested Plaintiff, they knew that he was present in the United States in an authorized period of stay"; (2) "[t]he Interpol Blue Notice did not provide probable cause for ICE and DHS's 2019 detention and arrest of Plaintiff on any ground"; (3) after he was arrested, "ICE officers asked Plaintiff to sign documents admitting he had violated immigration laws and facilitating his removal," which was presumably the Notice to Appear; and (4) the Notice to Appear was filed in immigration court nearly one week after Plaintiff's arrest.  ECF No. [12] ¶¶ 58, 72, 140–42.  At this juncture, taking these allegations as true, Plaintiff has sufficiently established that Defendants Angulo and Williams did not have probable cause to arrest.  Specifically, it is unclear what information the ICE officers relied on in effectuating Plaintiff's arrest where removal proceedings did not initiate until *after* the arrest when the Notice to Appear was served.  Accepting Defendants' position would mean that a removable, non-citizen could be arrested for no valid reason (*i.e.*, an Interpol Notice), and that the warrantless arrest would nevertheless be valid because the person was removable at the time of the arrest.  By that logic, a removable alien would enjoy no protection under the Fourth Amendment.  There is absolutely no support for this proposition.  Instead, at this juncture and taking the allegations in the Amended Complaint as true, the sole basis for the first arrest–that is alleged–was Russia's issuance of an Interpol Blue Notice for Plaintiff.  Whether the ICE officers had any knowledge regarding Plaintiff's removability to support probable cause is unknown at this juncture, and as such, the claims as to the first arrest are not barred by this theory.

### C. At This Stage, Qualified Immunity Does Not Bar the Claims Against Officers Williams And Angulo (Counts IV and V).

The Amended Complaint alleges that Defendants Williams and Angulo violated Plaintiff's Fourth Amendment right by conducting the first arrest without probable cause (Counts IV and V). ECF No. [12] at 22–24.  Thus, Plaintiff seeks *Bivens* damages stemming from his "injuries,

including economic loss, panic attacks, pain and suffering, and emotional harm." *Id.* at 23–24. Defendants Williams and Angulo argue that they are entitled to qualified immunity as to Counts IV and V of the Amended Complaint because it was not clearly established that they lacked probable cause to conduct the first arrest.  ECF No. [18] at 14–15.

Qualified immunity is an affirmative defense that "shields government officials performing discretionary acts 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Merricks v. Adkisson*, 785 F.3d 553, 558 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Thus, government officials are not held personally liable for objectively reasonable discretionary actions taken within their official capacity.  *Id.* Discretionary acts within the scope of authority are those actions "(1) undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [his] authority."  *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1356 (S.D. Fla. 2008), *aff'd*, 327 Fed. Appx. 870 (11th Cir. 2009) (alterations supplied) (quoting *Collier v. Dickinson,* 477 F.3d 1306, 1307 n.1 (11th Cir. 2007). Once the government official establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to prove that (1) the defendant violated a constitutional right that (2) was clearly established at the time of the alleged violation." *Mack v. Miles*, 795 Fed. App'x 682, 683 (11th Cir. 2019) (citing *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)).

Taking the allegations in the Amended Complaint as true, the Court finds that Defendants Angulo and Williams were acting within the scope of their discretionary authority when the alleged wrongdoing occurred.  Indeed, Plaintiff's claims against Defendants Angulo and Williams all arise from their duties as ICE officers.  *See* ECF No. [12] at 23 ("The actions and omissions of Defendant Angulo were committed in his discretionary capacity."); *id.* at 24 (The actions and omissions of

Defendant Williams were committed in his discretionary capacity."). Specifically, Plaintiff claims that, while employed by ICE, Defendants Angulo and Williams arrested Plaintiff without any probable cause. Because Plaintiff's claims are related to what Defendants Angulo and Williams did within their roles as employees of ICE, their actions were "within, or reasonably related to, the outer perimeter of [their] discretionary duties." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (alteration supplied and emphasis removed) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *Gonzales v. United States*, No. 12-CV-80125, 2014 WL 12279510, at *2 (S.D. Fla. Aug. 19, 2014) (concluding that ICE officers who allegedly violated the plaintiff's constitutional rights were acting within their discretionary authority because they were on duty at the time of the arrest and acting within their capacity as ICE officers).

Thus, the issue before the Court is whether the Amended Complaint sufficiently alleges that there was a constitutional violation of a clearly established right. *See Hannah v. Armor Corr. Health Servs. Inc.*, 792 Fed. App'x 742, 744 (11th Cir. 2019). A plaintiff may accomplish this by pointing "to a broader, clearly established principle that should control the novel facts of the situation." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012)); *Gonzales*, 2014 WL 12279510, at *2 ("The burden is now on Plaintiffs to show that (1) Defendants committed a constitutional violation and (2) that the constitutional right violated was clearly established at the time of the violation.") (citations and quotations omitted); *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345, 1356 (S.D. Fla. 2019), *aff'd*, 849 Fed. App'x 787 (11th Cir. 2021) (noting that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of the discovery") (citations and quotations omitted).

As previously set forth, "as of January 2014, it was clearly established both that

immigration arrests or detentions require probable cause and that someone's mere possibility of removability is insufficient to supply probable cause." *Alcocer v. Mills*, 800 Fed. App'x 860, 865 (11th Cir. 2020) ("[A]n officer may not choose to ignore information that has been offered to him or her,' nor may an officer 'elect not to obtain easily discoverable facts.") (citation and quotations omitted).  Probable cause only requires "reasonably trustworthy information." *Diaz*, 424 F. Supp. 3d at 1357 (quoting *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)).  However, even in the absence of probable cause, an officer may still be entitled to qualified immunity if he had "arguable probable cause," which turns on "whether reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed." *Alcocer*, 800 Fed. App'x at 866 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)) (alteration adopted).  Thus, to establish that the defendant is not entitled to qualified immunity, the plaintiff must show that "no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* (citation and quotations omitted).

The Amended Complaint alleges that the first arrest was not related to his removal because such proceedings had not yet commenced.  Thus, the basis for the first arrest was Russia's issuance of an Interpol Blue Notice.  Because the Court is unable to determine whether reasonable officers in the same circumstances could have believed that probable cause existed, the Motion to Dismiss should be **DENIED** as to Counts IV and V.  *See, e.g.*, *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1287 (M.D. Ga. 2012) (denying a motion to dismiss based on qualified immunity because "a reasonable [ICE] officer in [defendant's] position under the circumstances should have known his conduct as alleged violated [plaintiff's] Fourth and Fifth Amendment rights").

### D.  Plaintiff Has Standing To Seek Declaratory Relief In Counts I and II.

The Amended Complaint seeks, among other things: (1) "a declaration that agents of DHS

and ICE violate Plaintiff's Fourth Amendment rights when they detain or arrest him solely for violating 8 U.S.C. § 1227(a)(1)(B) while he is in a period of authorized stay and has not been unlawfully present"; (2) "a declaration that agents of DHS and ICE violate Plaintiff's Fourth Amendment rights when they detain or arrest him solely on the basis of either an Interpol Blue Notice, an Interpol Red Notice, or an Interpol diffusion"; and (3) "a declaration that agents of DHS and ICE violate Plaintiff's Fifth Amendment due process rights when they re-detain him post-bond on the basis of a material misrepresentation." ECF No. [12] at 26. Defendants argue that Plaintiff lacks standing because he has failed to establish a substantial likelihood of future harm. ECF No. [18] at 17. Specifically, Defendants argue that there is no "allegation suggesting that [Plaintiff] has any non-speculative reason to believe that he will be arrested again." *Id.*

Standing is a "threshold jurisdictional question," which requires courts to assess whether they have the power to entertain a suit. *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022). A plaintiff is required to show that it has suffered: (1) an "injury in fact" and that the injury suffered is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; and (2) that there is a "causal connection between the injury and the conduct complained of"; and (3) that the injury is likely to be "redressed by a favorable decision." *Id.* (citations and quotations omitted). Moreover, "28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of 'actual controversy.'" *Hartford Cas. Ins. Co. v. Intrastate Const. Corp.*, 501 Fed. App'x 929, 937 (11th Cir. 2012) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985)). An actual controversy for the purposes of Section 2201 is a "substantial continuing controversy between parties having adverse legal interests." *Id.* (quoting *Emory*, 756 F.2d at 1551–52). A "continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of

future injury." *Emory*, 756 F.2d at 1552.

The reasoning set forth in *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018), is instructive.  In that case, "[a]lthough Mr. Creedle ha[d] been a U.S. citizen since the moment of his birth by virtue of his father's U.S. citizenship, when he came to the U.S. from Honduras in 2015, ICE arrested him and placed him in administrative removal proceedings." *Id.* at 1282.  The removal proceedings were subsequently dismissed because it was determined that Mr. Creedle was a United States citizen. *Id.*  Thereafter, Mr. Creedle was arrested in Miami-Dade County following a domestic dispute and his fingerprints were sent to DHS. *Id.*  The next day, DHS sent Miami-Dade a detainer and request for transfer, stating that Mr. Creedle was "a removable alien." *Id.*  Mr. Creedle was detained for another day until ICE interviewed him and withdrew the detainer request. *Id.*  Pertinent here, Mr. Creedle filed suit against DHS and ICE, seeking, among other things, "a declaratory judgment that ICE's actions violated [his] Fourth Amendment rights." *Id.* at 1284.  The Court denied ICE's motion to dismiss on standing grounds, concluding that the complaint sufficiently alleged that Mr. Creedle was likely to be subject to future injury. *Id.* at 1287.  Specifically, the Court noted that Mr. Creedle had been wrongfully detained twice, and as such, his history of detention undermined the defendants' argument that it was highly unlikely that the circumstances would repeat themselves. *Id.* at 1287–88.  The Court further noted that the "cursory statement that one of ICE's databases reflects that Mr. Creedle is a U.S. citizen does not overcome the factual allegations in the amended complaint supporting an inference that he is sufficiently likely to suffer the same injury in the future." *Id.* at 1288.  In addition, the Court stated that Mr. Creedle's status a United States citizen was "not determinative" because it was clear that citizens were frequently detained. *Id.* at 1289.

Here, taking the allegations in the Amended Complaint as true, the Court finds that Plaintiff

has sufficiently established that he is likely to suffer future injury.  The Amended Complaint states that the first arrest was effectuated despite USCIS' notice that Plaintiff could remain in the United States while his asylum petition was pending.  ECF No. [12] ¶¶ 146–47.  The Amended Complaint further states that the first arrest was improperly premised on an Interpol Blue Notice.  *Id.* ¶ 8.  In addition, the Amended Complaint states that arrest runs afoul of Defendants' policies that Interpol notices cannot establish sufficient basis for an arrest pending removal.  *Id.* ¶¶ 8, 14.  Indeed, Defendants have not indicated that the Interpol notices have ceased or that additional notices would not have any bearing on Plaintiff's immigration status going forward.  Instead, Defendants merely state that there is no reason to believe Plaintiff would be arrested again.  ECF No. [18] at 17. However, Defendants' assertion is insufficient to defeat standing because Plaintiff *has* been arrested twice, both times the arrest report noted the Interpol Notices, and it is entirely unclear how any additional Notices could affect Plaintiff's immigration status moving forward.  Thus, the allegations in the Amended Complaint sufficiently establish that Plaintiff *could* be arrested in the future if another Interpol Notice is issued.  This creates a "direct and immediate dilemma" for Plaintiff as he pursues a lawful immigration status.  *See Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1358 (11th Cir. 2013) (internal citations omitted).  As such, because Plaintiff has sufficiently established standing to seek declaratory relief, Defendants' Motion should be **DENIED** on this basis.[7]

### E.  The Amended Complaint Fails To State An APA Claim In Connection With The First Arrest, Warranting Dismissal of Count II.

Under the APA, final agency actions are subject to judicial review.  5 U.S.C. § 704.

---

[7] If the District Court determines that it does have jurisdiction over claims related to the second arrest, the Amended Complaint has sufficiently established standing with respect to Count III, for the same reasons set forth above.

Specifically, courts may "hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(A).  In short, the APA, "provides for judicial review of all final agency action for which there is no other adequate remedy in court, except when statutes preclude judicial review or the agency action is committed to agency discretion by law."  *Creedle*, 349 F. Supp. 3d at 1293 (citations and quotations omitted); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1355 (S.D. Fla. 2007) (noting that the APA does not apply where an "agency action is committed to agency discretion by law").  "This standard requires the Court to assess whether the agency demonstrated a rational connection between the facts found and the choice made, and whether an agency considered all the relevant factors."  *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1288 (11th Cir. 2019) (internal citations and quotations omitted).

The Amended Complaint alleges that Defendants violated the APA in connection with the first arrest by "authorizing arrests of persons like Plaintiff for overstaying their visa while they were in an authorized period of stay with no accrued unlawful presence."  ECF No. [12] at 20. The Amended Complaint states that but for DHS' letter stating that he could remain in the United States while his asylum application was pending, "Plaintiff would not have intended to remain in the United States in the same circumstance."  *Id.*  Moreover, the Amended Complaint states that ICE and DHS acted arbitrarily or capriciously because "Plaintiff was arrested and detained as a result of DHS' inconsistent policies and practices."  *Id.*

The issue before the Court is whether Plaintiff sufficiently asserted an APA claim by stating that Defendants arrested him despite USCIS' letter.  In his Response, Plaintiff clarifies that this Count "challenges the manner and circumstances of [Plaintiff]'s arrest, specifically Defendant DHS' alleged policy and practice of arresting people with arbitrary disregard of its unambiguous

written policies (which implement the INA by authorizing a period of stay for certain USCIS applicants), while at the same time advising them that their presence in the United States is authorized." ECF No. [21] at 15.  Thus, Plaintiff argues that Defendants violated the APA because "DHS subjected him to arrest specifically for following to the letter the agency's official policy and instructions, thus through no fault of his own." *Id.* at 16.

Plaintiff relies on *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020).  In that case, the plaintiffs filed an APA claim against the Acting Secretary of Homeland Security, alleging that the decision to rescind DACA was arbitrary or capricious. *Id.* at 1903.  The Supreme Court concluded that DHS' recission of DACA violated the APA because DACA was not a "a non-enforcement policy," rather through the program, DHS had "solicited applications from eligible aliens, instituted a standardized review process, and sent formal notices indicating whether the alien would receive the two-year forbearance [from removal]." *Id.* at 1906.  Thus, "[u]nlike an agency's refusal to take requested enforcement action, access to these types of benefits is an interest courts often are called upon to protect." *Id.* (citations and quotations omitted).

Here, the Amended Complaint alleges that Defendants acted arbitrarily or capriciously in arresting Plaintiff while he remained in the United States "in an authorized period of stay with no accrued unlawful presence . . . ."  ECF No. [12] ¶ 147.  However, Plaintiff's filing of an asylum stays the actual removal while the application was pending, it does not preclude DHS from beginning removal proceedings against him. *See Duque Mendez v. Cuccinelli*, 467 F. Supp. 3d 1249, 1259–62 (S.D. Fla. 2020).  Indeed, USCIS' letter stating that Plaintiff could remain in the United States while his asylum application was pending did not confer any lawful status. *Kavafoglu v. Nielsen*, No. 4:18-CV-3512, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019) (noting

that a USCIS letter indicating that aliens could remain in the United States while their asylum application was pending "does not equate to a right protected by law during the pendency of their asylum application sufficient to confer 'lawful' immigration status"). And, USCIS' letter does not indicate that Defendants could not begin the removal proceedings, rather it only suggests that Plaintiff would not be removed. Because Plaintiff has not identified any policy that would preclude Defendants from commencing removal proceedings against him, Plaintiff has failed to show that Defendants acted arbitrarily or capriciously in doing so. Of course, if the claim Plaintiff advances is that he could not be arrested in connection with the removal proceedings, the Court would not have jurisdiction to review such claim because, as the Court noted above, the arrest and any action related to it would fall squarely within the provisions of the INA that limit the Court's jurisdiction. Thus, because Plaintiff has failed to allege sufficient facts to establish that Defendants' decision to begin the removal proceedings while his asylum application was pending was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, Plaintiff has failed to state an APA claim and Count II should be **DISMISSED WITH PREJUDICE**.

### F. The Amended Complaint Fails To State A Federal Tort Claims Act For Negligence (Count VII).[8]

The Amended Complaint alleges that the United States is liable for negligence under the FTCA because: (1) Defendants breached their duty "to act with reasonable care and not subject him to injury during the performance of their duties" when "at least up to Plaintiff's detention in November 2019, they caused him reasonably to believe that his period of stay in the United States

---

[8] In Count VI, Plaintiff also asserts a Federal Tort Claim Act for false imprisonment in connection with the first arrest. ECF No. [12] at 24. Defendants only raised a jurisdictional argument with respect to this Count. However, the Court has determined that it has jurisdiction over claims related to the first arrest. As such, this part of the claim is not dismissed.

was authorized"; (2) "Defendants DHS and ICE breached their duty of reasonable care when, in September 2020, they placed Plaintiff in custody without his back supporting belt or any substitute, while they knew or should have known that he suffered from severe back pain";[9] and (3) Defendants ICE and DHS breached their "duty to properly supervise and train their law enforcement agents to ensure all lawful policies and practices are followed" when they caused their "officers to detain Plaintiff unlawfully on account of an Interpol Blue Notice in November 2019, and on account of an alleged Interpol Red Notice, an Interpol diffusion, or a confusion of the latter for the former, in September 2020." ECF No. [12] at 25. Defendants argue that Count VII fails in its entirety because the FTCA does not apply to torts grounded in misrepresentation or those based on the exercise of a discretionary function. ECF No. [18] at 20.

The United States is a sovereign entity that is immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) ("It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued.") (citations omitted). "Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Id.* (citations omitted). However, this waiver of immunity is subject to various exceptions, as set forth in 28 U.S.C. § 2680. *Id.* at 1321–22. The misrepresentation exception provides that the FTCA shall not apply to "[a]ny claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). "[I]if the governmental conduct that is essential to proving a plaintiff's claim would be covered by the misrepresentation exception, then the Government is shielded from liability by sovereign immunity, no matter how the plaintiff may have framed his claim or articulated his theory." *Zelaya*, 781 F.3d at 1334. Thus,

---

[9] Although the following analysis is applicable to all the claims, including allegations relating to the second arrest, the Court has already found that it lacks jurisdiction to review those claims.

the exception applies where the basis of the plaintiff's claim is that it relies on a "communication of misinformation." *Id.* (quoting *Block v. Neal*, 460 U.S. 289, 296 (1983)).  The discretionary function exception precludes liability for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  In determining whether the discretionary function exception applies, two conditions must be satisfied: (1) the decision must involve an element of choice, and (2) the decision must implicate an exercise of judgment grounded on considerations of public policy.  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citations omitted).  Courts must consider "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997).  If a government policy "prescribes a course of action" or "embod[ies] a fixed or readily ascertainable standard," then the employee's conduct is not within the purview of the discretionary function exception. *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993) (emphasis and citations omitted).

Here, Plaintiff's contention that Defendants acted negligently in leading him to believe he was authorized to remain in the United States is barred by the misrepresentation exception.  Indeed, the basis for Plaintiff's claim is that Defendants' letter stating that he could remain in the United States while his asylum application was pending constituted a misrepresentation because he was subsequently arrested pending removal.  Because Plaintiff's claim is premised on an allegedly false communication, the misrepresentation exception bars Plaintiff's claim.

Moreover, Plaintiff's failure to train and supervise claim, which is premised on his allegedly unlawful arrests, is barred by the discretionary function exception.  This claim falls squarely within the discretionary function exception because it concerns Defendants' "exercise[]

[of] discretion in how [they] train[] [their] employees, meeting the first part of the two-part test," and "considerations of public policy because decisions as to how to train employees necessarily involve the allocation of [Defendant's] economic resources." *Echevarria-de-Pena v. United States*, No. 12-22248-CIV, 2013 WL 616932, at *4 (S.D. Fla. Feb. 19, 2013) ("Plaintiff's claim based upon the alleged negligent training of employees also falls within the ambit of the discretionary function exception.").[10]

In sum, Plaintiff's negligence claims are subject to the statutory exceptions to the United States' waiver of sovereign immunity for FTCA claims.   Accordingly, Count VII should be **DISMISSED WITH PREJUDICE** because Plaintiff has already amended his Complaint once and there is no additional set of facts that could take Plaintiff's allegations outside the scope of 8 U.S.C. § 2680.

## V.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. [18], be **GRANTED IN PART AND DENIED IN PART**.   The Motion to Dismiss should be **GRANTED** as to Count II (APA claim), Count III (Fifth Amendment claim in connection with the second arrest), Count VII (FTCA claim for negligence), and Count VIII

---

[10]   Although the Court found that it had no jurisdiction over claims relating to the second arrest, Plaintiff's contention that the ICE agents improperly detained him without his back support brace, would clearly be barred by the discretionary function exception.   Indeed, Plaintiff's claim concerns the agents' course of action in effectuating the arrest contains various elements of choice, including whether to accommodate Plaintiff's back conditions.   Indeed, "because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception." *Williams v. United States*, 314 Fed. App'x 253, 257–58 (11th Cir. 2009) (concluding that the discretionary function exception applied to an agent's actions in conducting a stop).   As such, "the decision regarding how to best effectuate an arrest warrant is 'fundamentally rooted in policy considerations, and . . . judicial second-guessing of this decision thus is not appropriate.'" *Id.* (quoting *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)).

(FTCA claim for violation of the Florida Constitution) and those counts should be **DISMISSED**, as set forth herein.  The Motion to Dismiss should be **DENIED** as to Count I (Fourth Amendment claim in connection with the first arrest), Count IV (*Bivens* claims against Defendant Angulo), Count V (*Bivens* claim against Defendant Williams), and Count VI (FTCA claim for false imprisonment).

## VI.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation.  The shortened time period was addressed with counsel who had an extensive opportunity to argue their positions before the undersigned.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 27, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**