UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-24482-DPG/Becerra

Vitaly Vladimirovich Bogomazov,

    Plaintiff,

v.

United States Department of Homeland
Security, *et al.*

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND REQUEST FOR EVIDENTIARY HEARING[1]

**THIS CAUSE** came before the Court on Defendants United States Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and the United States of America's (collectively, "Defendants") Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and Request for Evidentiary Hearing (the "Motion to Dismiss"), ECF No. [63]. Plaintiff Vitaly Vladimirovich Bogomazov ("Plaintiff" or "Bogomazov") filed a Response to the Motion to Dismiss, ECF No. [74]. Defendants did not file a Reply and the time to do so has passed. Upon review of the Motion to Dismiss, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. [63] be **GRANTED**. Plaintiff's Second Amended Complaint, ECF No. [55], should be **DISMISSED**.

---

[1] This action was referred to the undersigned for "a ruling on all pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters," by the Honorable Darrin P. Gayles, United States District Court Judge, ECF No. [60].

## I. BACKGROUND

Plaintiff is a native and citizen of Russia. ECF No. [55] ¶ 2. He last entered the United States lawfully, as a visitor, in July 2016. *Id.* While his visitor status was still valid, Plaintiff applied for asylum with the United States Citizenship and Immigration Services ("USCIS"), claiming that if he returned to Russia, he would be subject to prosecutorial persecution. *Id.* ¶ 32. In support of his asylum application, Plaintiff alleged that he and his wife were the founders of a company that "published a non-profit newspaper discussing different political situations in Russia, including the illegitimacy of the President, lack of an independent judicial system, corruption of the police and the authorities, annexing of the Crimea, the attack on Ukraine, and the incident of Nadezhda Savchenko's kidnapping." *Id.* ¶ 33. Plaintiff alleges that he also served as a "legal representative of victims who had suffered abuse from police and other authorities." *Id.* ¶ 34. As a result, Plaintiff alleges that he and his wife have been the subjects of "fabricated politically motivated criminal investigations . . . but, at all times relevant . . . had never been formally charged with or convicted of a crime." *Id.* ¶ 35.

While Plaintiff's asylum application was still pending, Plaintiff's daughter became a naturalized U.S. Citizen. *Id.* ¶ 44. As a result, Plaintiff became eligible to apply for an adjustment of status to lawful permanent resident in the United States. *Id.* ¶ 45. Plaintiff's daughter filed two I-130 immediate relative petitions with USCIS in connection with Plaintiff and his wife's applications for adjustment of status. *Id.* ¶ 46. Plaintiff does not allege exactly when he filed his application for adjustment of status or when his visitor status expired. *See id.* USCIS scheduled adjustment of status interviews with Plaintiff, his wife, and his daughter, on November 8, 2019, at its Miami Field Office. *Id.* ¶ 48.

Plaintiff was arrested twice by ICE agents. The first arrest occurred on the day of Plaintiff's USCIS interview, November 8, 2019 (the "First Arrest"). *Id.* ¶ 51. Plaintiff alleges that immediately following his interview, USCIS "turned over" Plaintiff to ICE agents, who placed him in handcuffs and arrested him without a warrant. *Id.* ¶ 52. The basis for his arrest and removal, according to the arrest report, was "remaining in the United States for a time longer than permitted," in violation of 8 U.S.C. § 1227(a)(1)(B). *Id.* ¶ 54. Additionally, the arrest report stated that Plaintiff was the target of an "active Interpol Blue Notice out of Russia for the Offense of Assault/Maltreatment Injury Causing Death/Manslaughter/Mu[r]der." *Id.* ¶ 58 (emphasis removed). Plaintiff was detained at the Krome Service Processing Center ("Krome") from November 8, 2019, through December 17, 2019, when he was released on a bond set by an immigration judge. *Id.* ¶¶ 68–76.

The second arrest occurred on September 23, 2020 (the "Second Arrest"). *Id.* ¶ 96. USCIS had scheduled a second adjustment of status interview with Plaintiff and his daughter for 11:30 a.m. that day. *Id.* ¶ 93. However, at approximately 9:48 a.m., ICE agents arrived in the parking lot of Plaintiff's condominium community, removed Plaintiff from his vehicle, and placed him under arrest. *Id.* ¶¶ 95–97. The basis for this arrest and removal, according to the arrest report, was again that Plaintiff "remained in the United States for a time longer than permitted," in violation of 8 U.S.C. § 1227(a)(1)(B). *Id.* ¶ 99. The arrest report also noted that Plaintiff failed to report to USCIS for an interview the day prior—which Plaintiff alleges is an error as his interview was scheduled for September 23 and not September 22 as noted. *Id.* ¶ 101. Further, the arrest report noted that Plaintiff had an "active Interpol Red Notice out of Russia for the offense of assault/maltreatment injury causing death/manslaughter/murder," and that on June 30, 2020 "Interpol [had] issued [a] Diffusion Notice" for Plaintiff. *Id.* ¶ 102 (emphasis removed). Plaintiff

3

was detained again at Krome from September 23, 2020 through October 2, 2020, when he was released on a bond set by an immigration judge. *Id.* ¶¶ 15–16, 109.

On September 30, 2020, Plaintiff's application for adjustment of status to lawful permanent resident was denied for failure to appear at his September 23, 2020 interview. *Id.* ¶ 110. Plaintiff alleges that his daughter provided correspondence and supporting evidence to USCIS regarding Plaintiff's arrest and inability to appear for the interview as scheduled. *Id.* ¶ 114. The same day, Plaintiff's daughter's I-130 petition in support of Plaintiff's petition was approved. *Id.* ¶ 115.

Plaintiff filed his original Complaint on October 30, 2020, against Defendants DHS, ICE, Ralph Angulo (a Deportation Officer involved in the arrests of Plaintiff) ("Angulo") and "G0838 Williams" (another Officer involved in the arrests of Plaintiff) ("Williams"). ECF No. [1]. The Complaint contained five counts, specifically: (1) one count for unconstitutional seizure in violation of the Fourth Amendment against ICE and DHS in connection with Plaintiff's First Arrest (Count I); (2) one count for violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) (the "APA"), against DHS and ICE in connection with Plaintiff's First Arrest (Count II); (3) one count for violation of the due process clause of the Fifth Amendment against ICE and DHS in connection with Plaintiff's Second Arrest (Count III); (4) one count for unconstitutional seizure in violation of the Fourth Amendment and for *Bivens* damages against Defendant Angulo in connection with Plaintiff's First Arrest (Count IV); and (5) one count for unconstitutional seizure in violation of the Fourth Amendment and for *Bivens* damages against Defendant Williams in connection with Plaintiff's First Arrest (Count V). *See generally id.*

Defendants DHS and ICE moved to dismiss the Complaint for lack of subject matter jurisdiction. ECF No. [8]. Defendants Angulo and Williams did not join in the motion as they had not yet been served. ECF No. [9]. Shortly thereafter, Plaintiff filed his First Amended

Complaint, adding the United States of America as a Defendant. ECF No. [12]. The First Amended Complaint asserted the same causes of action as the original Complaint, and in addition asserted: (1) one count for false imprisonment under the Federal Tort Claims Act (the "FTCA") against the United States relating to the First Arrest (Count VI); (2) one count for negligence under the FTCA against the United States relating to both arrests (Count VII); and (3) one count for violation of the Florida Constitution under the FTCA against the United States relating to the Second Arrest (Count VIII). *See generally id.* On July 26, 2021, after the filing of the First Amended Complaint, Plaintiff's removal case was dismissed. *See* ECF No. [24-1] at 2 ("As per the Service Motion, the Department of Homeland Security is exercising their Prosecutorial discretion following a determination that the circumstances of this case changed after the notice to appear was issued to such extent that continuation is no longer in the best interest of the government.") (citations omitted).

All Defendants jointly filed a Motion to Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim, ECF No. [18]. Therein, Defendants asserted a total of seven arguments, including, as relevant herein: the Court lacked jurisdiction over the case under several provisions of the Immigration and Nationality Act ("INA") that limit federal courts' jurisdiction to review immigration decisions. *See* ECF No. [18] at 3–23; *see also* ECF No. [29] at 9–11. In his response, Plaintiff argued that the INA did not deprive the Court of jurisdiction because none of the claims asserted relate to the Defendants' decision to commence proceedings, adjudicate cases, or execute removal orders against him. *See* ECF No. [29] at 12. Specifically, as to the First Arrest, Plaintiff argued that he was arrested without a warrant and prior to the service of the Notice to Appear, and as a result, his challenge is to wrongdoing that occurred before the proceedings ever commenced. *Id.* at 12–13. The undersigned

5

issued a Report and Recommendation recommending that the motion be granted in part and denied in part, which was adopted by the District Court. ECF Nos. [29], [32]. As relevant to the instant Motion to Dismiss, and as discussed in more detail below, the Court found that Plaintiff's claims relating to the Second Arrest were barred under the jurisdiction-stripping provisions of the INA, but that the facts as plead did not support the conclusion that Plaintiff's claims relating to the First Arrest were also barred. *See* ECF No. [29].

On May 12, 2022, Defendants Angulo and Williams appealed the District Court's Order adopting the undersigned's Report and Recommendation, ECF No. [32]. *See* ECF No. [36]. Defendants Angulo and Williams specifically challenged the portion of the Order denying their motion to dismiss based on qualified immunity. *Id.* at 1. Defendants then moved to stay the action pending resolution of the appeal before the U.S. Court of Appeals for the Eleventh Circuit. ECF No. [37]. On May 31, 2022, the District Court granted the motion to stay pending resolution of the appeal. ECF No. [44].

On November 18, 2022, while the appeal was still pending, Plaintiff filed an Unopposed Motion for Leave to File Second Amended Complaint and for Rule 62.1(A)(3) Indicative Ruling, ECF No. [50]. The District Court entered an Order on December 7, 2022, stating that it "intends to grant the Motion for Leave to File Second Amended Complaint" should the Eleventh Circuit return jurisdiction to the District Court. ECF No. [51]. Accordingly, on January 18, 2023, the Eleventh Circuit entered an order remanding the matter in full to the District Court "[i]n light of the district court's December 7, 2022 indicative ruling that it intends to grant Appellee's motion for leave to file a second amended complaint if this Court returns jurisdiction to it[.]" Order, *Angulo v. Bogomazov*, No. 22-11653 (11th Cir. Jan. 18, 2023), ECF No. [29]. Thereafter, the District Court granted Plaintiff's Unopposed Motion for Leave to File Second Amended

Complaint and for Rule 62.1(A)(3) Indicative Ruling, ECF No. [50].  ECF No. [53].

### A.  The Second Amended Complaint

On January 23, 2023, Plaintiff filed his Second Amended Complaint, which is the operative pleading herein.  ECF No. [55].  The Second Amended Complaint asserts claims against Defendants DHS, ICE, and the United States of America only, removing all claims against former Defendants Angulo and Williams, and all claims relating to the Second Arrest.  *Id.*  The Second Amended Complaint asserts only two claims: (1) one count of unconstitutional seizure in violation of the Fourth Amendment against Defendants ICE and DHS (Count I); and (2) one count of false imprisonment pursuant to the FTCA against Defendant United States of America (Count II)[2].  *Id.*  Notably, both claims in the Second Amended Complaint relate to the First Arrest only.  *Id.* at 17–18.  Plaintiff seeks the following damages: (1) a declaration "that agents of DHS and ICE violate Plaintiff's Fourth Amendment rights when they detain or arrest him solely for violating 8 U.S.C. § 1227(a)(1)(B) while he is in a period of authorized stay and has not been unlawfully present"; (2) a declaration "that agents of DHS violate Plaintiff's Fourth Amendment rights when they detain or arrest him solely on the basis of an Interpol blue notice"; (3) an award of "appropriate compensatory damages against the United States of America"; (4) an award of "reasonable attorney's fees and costs under the Equal Access to Justice Act ('EAJA'), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law;" and (5) any other relief the Court deems just and proper.  *Id.* at 18–19.

After Plaintiff filed his Second Amended Complaint, the District Court entered an Order Setting Expedited Discovery Regarding Subject Matter Jurisdiction.  ECF No. [59].  Therein, the

---

[2] The Second Amended Complaint refers to this count as "Count VI," likely referring to its prior label in the First Amended Complaint.  However, for clarity as only two counts remain, the Court will refer to this count as Count II.

District Court authorized discovery "limited to matters bearing on subject matter jurisdiction," to "occur over 120 days." *Id.* at 1.  The District Court entered its Order on February 2, 2023, and the jurisdictional discovery period is now closed.  *Id.*

### B.  The Instant Motion

On February 16, 2023, Defendants DHS, ICE, and the United States of America (collectively, "Defendants") filed their Renewed Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Subject Matter Jurisdiction (the "Motion to Dismiss"), ECF No. [63]. Specifically, Defendants renew the first argument from their previous Motion to Dismiss the First Amended Complaint, that "the jurisdiction-stripping provisions of the Immigration and Naturalization Act preclude[] this Court from addressing" Plaintiff's claims in the Second Amended Complaint.  *Id.* at 1.  Defendants note that while the First Report and Recommendation found that the Court had jurisdiction over claims relating to the First Arrest, the analysis differs now that they are able to proffer evidence that Plaintiff "undisputedly was arrested in connection with the removal proceedings because of his overstay." *Id.* at 4.  Defendants argue that the decision to commence removal proceedings against Plaintiff was underway at least as of July 2019, based on evidence attached to the Motion to Dismiss, and the First Arrest was executed in connection with those proceedings rather than the Interpol Notices alone.  *Id.*  As such, Defendants argue that the Court is barred from review of claims relating to the First Arrest under the jurisdiction-stripping provisions of the INA.  *Id.*  Finally, to the extent that any relevant factual disputes remain, Defendants request an evidentiary hearing.  *Id.* at 19–20.

Plaintiff's Response to the Motion to Dismiss was due on July 3, 2023.  *See* ECF No. [59]. However, prior to this deadline, Plaintiff's counsel moved to withdraw from representation of Plaintiff and to extend Plaintiff's deadline to respond to the Motion to Dismiss.  ECF No. [68].

8

Following a status conference before the undersigned on June 28, 2023, the Court granted the motion. ECF No. [72]. Specifically, the Court granted Plaintiff's counsel's request to withdraw, granted an extension through and including July 12, 2023, for Plaintiff's response to the Motion to Dismiss, ordered Plaintiff's counsel to provide a copy of the Order translated to Russian to Plaintiff, and ordered Plaintiff's counsel to explain the upcoming deadlines to Plaintiff. *Id.* at 1–2. On July 1, 2023, former counsel for Plaintiff filed a Notice of Compliance with the Court's Order. ECF No. [73].

On July 10, 2023, in compliance with the extended deadline, Plaintiff filed his Response to the Motion to Dismiss. ECF No. [74]. The Response, however, consists of a single page, and states only:

> I don't have an Attorney currently and and [sic.] the text of Defendant's Motion to Dismiss is not available to me. Therefore, I cannot file reasonable objections. As far as I know, the Defendant [sic.] has already filed a similar Motion previously, which was denied by the Court in part, exactly in the same part of the Motion to Dismiss. Therefore, I ask the Court to deny satisfying the Defendant's [sic.] Motion to Dismiss.

ECF No. [74]. Defendants did not file a Reply and the time to do so has passed. The Motion to Dismiss is now ripe for review.

## II.   ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a pleading for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

Here, Defendants move to dismiss Plaintiff's Second Amended Complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. [63].

9

Defendants' Motion relies on three "jurisdiction-stripping" provisions of the INA. *Id.* First, Section 1252(g) of the INA provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Second, Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Third, Section 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).

Defendants argue that these three jurisdiction-stripping provisions of the INA—primarily Section 1252(g), and alternatively, Sections 1226(e) and 1252(a)(2)(B)—divest this Court of subject-matter jurisdiction over all of Plaintiff's claims in the Second Amended Complaint. *Id.* at 11–17. Specifically, Defendants argue first that this Court lacks subject-matter jurisdiction under Section 1252(g), which prohibits federal courts from reviewing "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . against any alien under this chapter," because the First Arrest, which forms the basis of all claims, was undisputedly executed in connection with Plaintiff's removal proceedings. *Id.* at 11–15. Alternatively, Defendants argue that Plaintiff's claims are also barred by Sections 1226(e) and

10

1252(a)(2)(B) of the INA, which prevent review of "discretionary" decisions by the Attorney General and DHS. *Id.* at 15–17.

To be clear, Defendants' arguments are not new. Defendants advanced the same arguments in their Motion to Dismiss the First Amended Complaint, ECF No. [18], which the Court addressed in its Report and Recommendation on that motion (the "First Report and Recommendation"). ECF No. [29]. Specifically, the undersigned found that the Court lacked jurisdiction over Plaintiff's claims relating to the Second Arrest but retained jurisdiction over the claims relating to the First Arrest. *Id.* at 16–26. The relevant question therein was "whether the two arrests arise from the commencement or adjudication of removal proceedings against Plaintiff," such that Section 1252(g) of the INA would bar Plaintiff's claims relating to each arrest. *Id.* at 17–22. As to the Second Arrest, the Court found that "Plaintiff's claims require this Court to review whether the information considered to cancel [Plaintiff's] bond (which led to the re-arrest) was sufficient," which is an analysis barred by Section 1252(g) as it relates to the adjudication of removal proceedings. *Id.* As to the First Arrest, however, the Court found that as pled, the First Arrest was not executed in connection with the commencement of a removal proceeding, as the Notice to Appear was not served until after the arrest, and no other facts supported the conclusion that the proceeding was underway. *Id.* In so finding, the Court noted that while "Defendants unequivocally state that Plaintiff was arrested because he overstayed his visa," that statement "ignores the allegations in the [First] Amended Complaint—allegations that the Court must accept as true." *Id.* at 18.

In the instant Motion to Dismiss, Defendants argue that the analysis is now different because the Parties were permitted to gather and proffer evidence to support the instant Motion and Response. *See* ECF Nos. [63]; [63-1]–[63-7]; [64-1]. The Court agrees. The record is clear

11

that the First Arrest was made in connection with the removal proceedings. As such, the Court does not have subject matter jurisdiction over the Second Amended Complaint.

Specifically, the jurisdictional discovery included the Declaration of Deportation Officer Ralph Angulo, an officer involved in the First Arrest at issue (the "Angulo Declaration"). ECF No. [64-1]. The Angulo Declaration provides that "[o]n November 8, 2019, [Angulo] accompanied [his] colleague, Officer George Williams, to USCIS's Miami office to arrest an individual named Vitaly Bogomazov to place him into removal proceedings." *Id.* at 2. Angulo attests that he "physically checked Mr. Bogomazov's immigration file (his 'A-file') to again confirm that he was removable because he had unlawfully overstayed his visa and thus was amenable for removal proceedings," and "[b]ecause Bogomazov overstayed his visa and was therefore removable under section 237(a)(1)(B) of the Immigration and Nationality Act, Officer Williams and [Officer Angulo] arrested and transported [Plaintiff] to Krome Detention Center ('Krome') in Miami, Florida to process him for removal proceedings." *Id.* at 1–3. Most notably, Officer Angulo attests that he "arrested Bogomazov to place him in removal proceedings because he had overstayed his visa and was present in violation of immigration law, not because he was the subject of an INTERPOL Blue Notice," and he "arrested Bogomazov as part of ICE's commencement of removal proceedings against him," such that the "arrest arose from ICE's decision or action to commence removal proceedings against him." *Id.* at 3–4. Defendants also provide the Declaration of Deportation Officer Johnny Gonzalez. ECF No. [63-5]. Officer Gonzalez was not at the scene of the First Arrest, but rather received information days beforehand that "a potentially removable individual, Vitaly Bogomazov, was going to be present for an interview at USCIS's Miami office," and after he "ensured that [Plaintiff] was removable because he was present in violation of immigration law, and after ERO's Fugitive Operations team

12

indicated that they were interested in apprehending him, [they] coordinated Bogomazov's arrest with USCIS." *Id.* at 2.

Next, Defendants provide multiple emails supporting the fact that Plaintiff's arrest was pre-planned in connection with the commencement of removal proceedings against him. *See* ECF Nos. [63-2], [63-3]. Emails between Interpol Washington and USCIS, show that as early as April 15, 2019—approximately seven months prior to the First Arrest— Interpol informed USCIS that "under United States law, the INTERPOL Notice [against Plaintiff] alone does not provide authority to arrest this subject," but "there may be provisions pursuant to the immigration laws and regulations that would render the subject ineligible for the immigration benefit sought." ECF No. [63-2] at 4. On July 9, 2019, Interpol Washington and ICE communicated further regarding the planned arrest, stating "USCIS/FDNS referred this case to ICE to investigate for arrest," and "[p]ermission is already granted to use the INTERPOL docs in court." ECF No. [63-3] at 1–3. Defendants assert that the reference is to the Immigration Court which handles removal proceedings. ECF No. [63] at 7. Additionally, an attachment to the July 9, 2019 email notes that Plaintiff was granted a B2 "visitor for pleasure" visa on July 10, 2016, and then failed to board his departing flight from the United States in October 2016. ECF No. [63-4]. Defendants state that Plaintiff's B2 visa expired six-months after issuance, or January 9, 2017, pursuant to 8 C.F.R. 214.2(b). ECF No. [63] at 5. The attachment also indicates that Plaintiff's I-485 application for adjustment of status was not filed until November 26, 2018, although the attachment does not mention any application for asylum. ECF No. [63-4] at 2. Thereafter, on November 4, 2019, USCIS and DHS exchanged emails regarding plans to arrest and detain Plaintiff following his USCIS interview. ECF No. [63-2] at 1–2.

13

Finally, Defendants provide additional documentation in support of Plaintiff's removability. Defendants provide a copy of Form I-213, Record of Removable/Inadmissible Alien, associated with the First Arrest. ECF No. [63-6]. Therein, Officer Williams noted that "[t]here [were] several unsuccessful attempts to locate [Plaintiff] since July 2019," and Plaintiff "is considered a flight risk." *Id.* at 2; *see also* ECF No. [63] at 7. Defendants also provide the Notice to Appear issued to Plaintiff on the date of the First Arrest, stating that he "remained in the United States beyond January 9, 2017 without authorization from the Immigration and Naturalization Service or its successor the Department of Homeland Security," in violation of Section 237(a)(1)(B) of the INA. ECF No. [63-7] at 1.

While Plaintiff did file a Response to the Motion to Dismiss, the Response does not address Defendants' arguments or evidence. *See* ECF No. [74]. Indeed, while Plaintiff had 120 days to conduct jurisdictional discovery in this matter, Plaintiff provides no evidence with his Response. *Id.* While the Court is mindful that Plaintiff is now proceeding *pro se* in this action, Plaintiff has had ample time and opportunity to confer with his prior counsel, retain new counsel, and/or request additional time to respond. The undersigned even granted a brief extension for Plaintiff's Response in connection with prior counsel's Motion to Withdraw. *See* ECF No. [72]. Instead, Plaintiff chose to file a single page Response simply referring the Court to the prior submissions.

In the First Report and Recommendation, the Court specifically stated that "discovery in the case might show what the Government argues, namely that Plaintiff's arrest was in connection with the removal proceedings". *Id.* Now, with the benefit of limited discovery and based on the undisputed evidence the record, the First Arrest was executed in connection with the commencement of removal proceedings against Plaintiff. While it is true that a removal proceeding commences upon the service of a Notice to Appear, there is no requirement that actions

*in connection* with the commencement of the removal proceeding must await issuance of the Notice to Appear.  *See Gonzales v. FedEx Ground Package Sys., Inc.*, No. 12-cv-80125, 2013 WL 12080223, at *9 (S.D. Fla. Aug. 1, 2013).  The evidence proffered herein, including the attestations of Officers Angulo and Gonzalez, the email correspondence between Defendants and Interpol, and the other supporting documentation, makes clear that Plaintiff was a potential subject for removal proceedings months prior to the First Arrest.  These documents repeatedly acknowledged that Interpol notices were not the basis for Plaintiff's arrest.  *See, e.g.,* ECF Nos. [63-2] at 4; [63-4] at 1.  Additionally, the sworn testimony of Officer Angulo certified that he and Officer Williams "arrested Bogomazov to place him in removal proceedings because he overstayed his visa and was present in violation of immigration law, not because he was the subject of an INTERPOL Blue Notice."  ECF No. [64-1] at 3.  Further, the actions of Officers Angulo and Williams, including the preexisting plan to immediately transport of Plaintiff to Krome and issue a Notice to Appear the same day, corroborate the fact that the arrest was executed in connection with the removal proceedings.  *Id.* at 4.

Because the Second Amended Complaint challenges the First Arrest only, and the First Arrest was executed in connection with the commencement of removal proceedings against Plaintiff, the undersigned finds that this Court lacks jurisdiction over the Second Amended Complaint pursuant to Section 1252(g) of the INA.  Section 1252(g) of the INA prohibits federal courts from exercising subject matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings against any alien[.]"  8 U.S.C. § 1252(g).  The evidence presented by Defendants now shows that the First Arrest falls into one of the enumerated categories of Section 1252(g)—namely, the commencement of proceedings—such that this Court is divested of subject matter jurisdiction.  Accordingly, the

undersigned recommends that Defendants' Motion to Dismiss be **GRANTED** and the Second Amended Complaint be **DISMISSED**.

## III.  RECOMMENDATION

For the reasons outlined above, the Court **RECOMMENDS** that Defendants' Renewed Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. [63], be **GRANTED**. Plaintiff's Second Amended Complaint, ECF No. [55], should be **DISMISSED**.

## IV.  OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on August 23, 2023.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE